**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE CO., *et al.*,<br><br>*Plaintiffs*,<br><br>-v.-<br><br>GRAND MEDICAL SUPPLY, INC., *et al.*,<br>*Defendants*. | Civil Action<br>No. 11 Civ. 5339 (BMC)<br><br>December 20, 2011 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO COMPEL ARBITRATION**
**BY DEFENDANTS**
**ALBERT KHAIMOV, GRAND MEDICAL SUPPLY, INC., ROYAL MEDICAL**
**SUPPLY, INC., AND UTOPIA EQUIPMENT, INC.**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... i

SUMMARY OF ALLEGATIONS ........................................................................................... 1

ARGUMENT ............................................................................................................................ 3

     I.       GEICO's Legal Claims Against the Moving Defendants Must Be Arbitrated ................................................................................................. 3

          A.   GEICO Agreed, in Writing, To Arbitrate Any Issues Related to the No-Fault Claims at Issue ................................................................. 3

          B.   New York No-Fault Law Also Provides Claimants the Option To Elect Arbitration of Issues Related to No-Fault Claims ................... 6

          C.   Arbitration Does Not Limit GEICO's Ability To Recover for Any Alleged Fraud by the Moving Defendants ......................................... 8

          D.   Arbitration Is Appropriate for GEICO's Lawsuit as a Matter of Public Policy ............................................................................................ 9

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

## CASES

*Chatham Shipping Co. v. Fertex Steamship Corp.*,
  352 F.2d 291 (2d Cir. 1965) ................................................................................ 3

*Com-Tech Assocs. v. Computer Assocs. Int'l*,
  753 F. Supp. 1078 (E.D.N.Y. 1990) ................................................................. 5, 7

*Country-Wide Ins. Co. v. Frolich*,
  465 N.Y.S.2d 446 (N.Y. City Civ. Ct. 1983) .............................................. 6, 8, 10

*Country-Wide Ins. Co. v. Harnett*,
  426 F. Supp. 1030 (S.D.N.Y. 1977) ................................................................. 8, 9

*GMAC Ins. Co. v. Mayard*,
  No. 13203/09 (N.Y. Sup. Ct. Aug. 29, 2011) ...................................................... 7

*Guida v. Home Savings of Am., Inc.*,
  793 F. Supp. 2d 611 (E.D.N.Y. 2011) ................................................................. 6

*In re Currency Conversion Fee Antitrust Litig.*,
  361 F. Supp. 2d 237 (S.D.N.Y. 2005) ................................................................. 4

*Lyeth v. Chrysler Corp.*,
  929 F.2d 891 (2d Cir. 1991) ................................................................................ 8

*Matter of Rosenblum*,
  363 N.E.2d 585 (N.Y. 1977) ............................................................................... 6

*MeritPlan Ins. Co. v. Wilguens*,
  No. 29973/09 (N.Y. Sup. Ct. Sept. 27, 2011) ..................................................... 7

*Oldroyd v. Elmira Sav. Bank, FSB*,
  134 F.3d 72 (2d Cir. 1998) ................................................................................. 4

*Republic Mortgage. Ins. Co. v. Countrywide Fin. Corp.*,
  928 N.Y.S.2d 42 (N.Y. App. Div. 2011) ............................................................. 9

*Ross v. Am. Express Co.*,
  547 F.3d 137 (2d Cir. 2008) ............................................................................... 4

## STATUTES

N.Y. Insurance Law § 409 ................................................................................................. 8

N.Y. Insurance Law § 5106 ........................................................................................ 6, 8, 9

Defendants Albert Khaimov, Grand Medical Supply, Inc., Royal Medical Supply, Inc., and Utopia Equipment, Inc. (collectively, the "Moving Defendants" or "Retailers"), respectfully submit this Memorandum of Law in support of their motion to compel arbitration.

## SUMMARY OF ALLEGATIONS

In short, Plaintiffs (collectively, "GEICO"), allege that the Moving Defendants overcharged them for durable medical equipment ("DME") and orthotic devices that the Moving Defendants had billed for under GEICO's insurance policies and New York's No-Fault law. GEICO now claims that these overcharges were fraudulent, and seeks return of these payments along with treble damages and attorneys' fees. GEICO also seeks a declaratory judgment to prevent the Moving Defendants from seeking payment on pending or future bills.

New York's No-Fault insurance law, N.Y. Ins. Law §§ 5101, *et seq.*, requires automobile insurers such as GEICO to pay for reasonable health service expenses incurred by auto accident victims. ¶ 19.[1] Following an auto accident injury, victims may consult a physician who, as appropriate, may prescribe use of durable medical equipment or orthotic devices (generally, "medical equipment" or "equipment") to aid recovery. *See* ¶ 23. The Moving Defendants provide such equipment (which they receive in bulk from wholesalers) to patients when their physicians prescribe it. This is similar to pharmacists dispensing prescribed drugs.

In order to minimize the administrative and financial burden on accident victims, such patients are permitted to assign their No-Fault benefits to their medical providers, including sellers of medical equipment such as the Retailers. Retailers may then request payment for the equipment directly from No-Fault insurers. ¶¶ 21-22. The central issue in this litigation is

---

[1] Paragraph citations in this Memorandum refer to GEICO's Complaint, filed November 1, 2011.

whether each Retailer submitted the correct charges for medical equipment to GEICO under the No-Fault law, for each of the insurance claims that GEICO now disputes.

In order to simplify insurance claim processing, insurers use a standardized set of medical billing "codes" to describe medical services, including medical equipment. These codes describe many, but not all, of the medical equipment that physicians might prescribe. Medical providers, including the Moving Defendants, submit bills using the codes that best describe the equipment that a patient received, along with brief descriptions of the equipment. For some billing codes, New York's No-Fault law establishes a maximum price. ¶ 24-25.[2] However, physicians often prescribe, and medical retailers therefore provide, equipment that does not exactly correspond to any of these billing codes. In such cases, the No-Fault law sets the retailer's fee at either 150% of the retailer's acquisition cost for the equipment from its wholesaler, or the "usual and customary price charged to the general public" – whichever is less. 11 N.Y.C.R.R. § 68; *see* ¶ 26. Thus, if such medical equipment costs $100 for a Retailer to acquire from a wholesaler, it may bill the No-Fault insurer for $150. But if the "usual and customary price" for the same item is $125, the Retailer may only bill $125 – regardless of the acquisition cost.

GEICO alleges that the Moving Defendants submitted bills that contained charges in excess of either of these amounts, and that such charges were fraudulent. Thus, the basic dispute here simply concerns what amounts, if any, GEICO is obligated to pay on the Moving Defendants' various bills. This particular action apparently concerns hundreds of such bills. *See* ¶ 5.

Although this lawsuit comprises a basic pricing dispute, GEICO's Complaint goes on to describe how the Moving Defendants allegedly concealed these overcharges. Specifically, GEICO alleges that the Moving Defendants induced physicians to prescribe medical equipment

---

[2] These billing codes, and their associated rates, are publicly available. *See* Medical Care Fee Schedules, *available at* http://www.wcb.state ny.us/content/main/hcpp/FeeSchedules.jsp (last visited Dec. 15, 2011).

not listed in the New York State Medicaid Fee Schedule, or to write prescriptions with generic

descriptions. ¶¶ 29-31. The Moving Defendants also allegedly encouraged their equipment

wholesalers to submit wholesale invoices with inflated prices. ¶ 32. The Moving Defendants paid

these invoices, but allegedly received a refund for some of these payments through cash

payments (or similar methods) from the wholesalers. ¶ 33. Of course, regardless of the amounts

paid to the wholesalers, the Moving Defendants' reimbursements should always have been

limited by the usual and customary price for such equipment.

## ARGUMENT

### I.     GEICO's Legal Claims Against the Moving Defendants Must Be Arbitrated

#### A.     *GEICO Agreed, in Writing, To Arbitrate Any Issues Related to the No-Fault Claims at Issue*

All of the No-Fault claims in this case involve auto accident victims whose medical

expenses were covered under insurance policies issued by GEICO in New York. *See* ¶¶ 18, 28.

To the best of Moving Defendants' knowledge, each of these insurance policies contained an

arbitration provision for medical payments that stated – either exactly or with no material

difference:

> ARBITRATION
> In the event any person making a claim for first-party benefits and
> the Company do not agree regarding any matter relating to the
> claim, such person shall have the option of submitting such
> disagreement to arbitration pursuant to procedures promulgated or
> approved by the Superintendent of Insurance.

*See* Exhibit A, 3 (excerpt from sample GEICO policy). As the Complaint notes, patients assigned

their benefits under these insurance policies to retailers, ¶ 21, and this assignment included their

right to arbitrate disputes as to these benefits. *See Chatham Shipping Co. v. Fertex Steamship

Corp.*, 352 F.2d 291, 294 (2d Cir. 1965) ("[A]bsent contrary expression, assignment of a contract

3

carries with it a right to arbitration therein provided."). Because GEICO's lawsuit simply concerns the question whether or not it overpaid these medical benefits, GEICO's legal claims are all encompassed by this broad arbitration clause that covers "any matter relating" to a claim for first-party benefits, which the policy's endorsement defines elsewhere to include medical expenses like the ones at issue here. Thus, under the Federal Arbitration Act ("FAA") and GEICO's insurance policies, this lawsuit must be referred to arbitration if the claimants – here, the Moving Defendants – so elect, as they do by this motion.

The FAA "establishes a liberal policy in favor of arbitration as a means to reduce the expense and delay of litigation," *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 248 (S.D.N.Y. 2005) – a rationale that is particularly relevant here, *see* Section I.D, *infra*. The FAA therefore expresses "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (internal quotation marks omitted). And the Second Circuit explains that "it is difficult to overstate the strong federal policy in favor of arbitration." *Id.* (internal quotation marks omitted). Thus, arbitration clauses are read "as broadly as possible," and courts resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) (internal quotation marks and citations omitted) (alteration in original).

Under this standard, GEICO's lawsuit falls squarely within the arbitration clause that appears in its insurance policies. Indeed, the clause is worded so broadly that it provides a presumption of arbitrability. In *Oldroyd*, for instance, the Second Circuit held that a clause making arbitrable "any dispute, controversy or claim arising under or in connection with" an agreement was "precisely the kind of broad arbitration clause that justifies a presumption of

4

arbitrability." *Id.* at 76 (internal quotation marks and brackets omitted). Under such "broad" arbitration clauses (in contrast to "narrow" clauses that deal with only specific issues), "the strong federal presumption in favor of arbitrability applies with greater force." *Com-Tech Assocs. v. Computer Assocs. Int'l*, 753 F. Supp. 1078, 1084 (E.D.N.Y. 1990) (internal quotation marks and citation omitted). The clause here – providing an arbitration option for "any matter relating to" a personal injury claim (which includes medical expenses) – is likewise broad, and makes GEICO's action presumptively arbitrable.

Whether or not there is a presumption of arbitrability, GEICO's arbitration clause encompasses this dispute because GEICO's legal claims are plainly "matter[s]" that "relate[] to" "claim[s] for first-party benefits" for medical expenses. The thrust of the Complaint, after all, is simply that GEICO incorrectly paid the bills that Retailers submitted for providing medical equipment to patients covered by GEICO's insurance policies. GEICO cites a variety of theories and alleged misrepresentations by Retailers purporting to establish that the payments were incorrect – that prices were impermissibly high, or that equipment was never provided, for instance – but they all boil down to the question whether GEICO was required to pay the Retailers' bills for medical expenses under the insurance policies in the first place.

GEICO's claims for relief, for instance, allege that Retailers' bills for medical expenses were and are "false and fraudulent" and made "to induce GEICO to pay charges that were not compensable" to the Retailers, *e.g.*, ¶ 72, that the bills caused GEICO to "reasonably believe[] that it was legally obligated to make such payments," *e.g.*, ¶ 78, and that the "majority of the bills submitted to GEICO . . . are fraudulently inflated," *e.g.*, ¶ 66. Under each of these theories, GEICO seeks the same approximate damages (or a trebling of these damages under RICO), which apparently correspond to GEICO's payments of allegedly fraudulent bills.

Because all of GEICO's legal claims relate to its disagreement with Retailers as to claims for medical expenses under GEICO's auto insurance policies, these legal claims are governed by the policies' arbitration clause. The clause gives claimants (including the Retailers, by assignment) the right to seek arbitration at their option. The Moving Defendants elect this option. This Court should therefore compel arbitration of GEICO's claims against the Moving Defendants, and stay this action pending the completion of arbitration. *See, e.g.*, *Guida v. Home Savings of Am., Inc.*, 793 F. Supp. 2d 611, 620 (E.D.N.Y. 2011) (citing 9 U.S.C. § 3) (finding stay pending arbitration appropriate "to promote expeditious resolution of th[e] dispute").

> B.     *New York No-Fault Law Also Provides Claimants the Option To Elect Arbitration of Issues Related to No-Fault Claims*

No-Fault claimants also have a statutory option to request arbitration of issues related to payments. N.Y. Insurance Law § 5106 provides that "[e]very insurer shall provide a claimant with the option of submitting any dispute involving the insurer's liability to pay first party benefits, or additional first party benefits, the amount thereof or any other matter which may arise pursuant to subsection (a) of this section to arbitration . . . ." N.Y. Ins. Law § 5106(b). "Claimants" include an insured party's assignee. *See Matter of Rosenblum*, 363 N.E.2d 585, 586 (N.Y. 1977).

Although it is more common for claimants to request arbitration when first seeking payment of No-Fault benefits, New York courts have recognized that claimants may compel arbitration when an insurer seeks recovery of payments already made. In *Country-Wide Ins. Co. v. Frolich*, 465 N.Y.S.2d 446 (N.Y. City Civ. Ct. 1983), the court granted a medical provider's motion to compel arbitration where an insurer had initially paid benefits but subsequently filed a lawsuit to recover the payment. *See id.* at 446, 448. The court found the statutory language quite clear as to the arbitration option: "Clearly, the option to arbitrate a dispute involving first party

benefits pursuant to the statute and regulations lies with the claimant, who may choose between the arbitration provided by statute and a judicial forum in the first instance." *Id.* at 447. The court also concluded that it would be "consistent with the legislative intent of the statute and its implementary regulations" to compel arbitration. *Id.* at 448. Arbitration would, for instance, promote "speedy and efficacious determinations" of benefits disputes, where health service fees determinations would be made "by persons uniquely qualified to make these determinations." *Id.*

The same reasoning applies here. As explained, all of GEICO's legal claims here relate to payment of No-Fault benefits. Like the insurer in *Frolich*, GEICO seeks to recover prior payments that it alleges were incorrectly paid to Retailers. Thus, as in *Frolich*, all of GEICO's legal claims must be arbitrated – including its civil RICO claims, *see Com-Tech Assocs.*, 753 F. Supp. at 1084 – when the No-Fault claimant (here, the Moving Defendants) request.

More recent New York court decisions similarly recognize that claimants or their assignees may choose to arbitrate when an insurer brings an affirmative recovery action in court. In *GMAC Ins. Co. v. Mayard*, No. 13203/09 (N.Y. Sup. Ct. Aug. 29, 2011) (attached at Exhibit B), for instance, an insurer initiated a lawsuit to recover certain no-fault payments. However, the court denied the insurer's request for a preliminary injunction that would have enjoined claimants from arbitrating the disputed claims. *See id.* at 11. Thus, the court implicitly recognized that arbitration was the proper forum for the insurer to resolve the merits of its dispute over payments, even where the insurer had initiated litigation, where the claimants had elected their option to arbitrate these questions.[3]

---

[3] The decision in *MeritPlan Ins. Co. v. Wilguens*, No. 29973/09 (N.Y. Sup. Ct. Sept. 27, 2011) (attached at Exhibit C), is in accord with this result. In *Wilguens*, an insurer had brought a lawsuit against various claimants seeking a declaratory judgment that it was not required to pay certain no-fault claims. The claimants sought to arbitrate these claims, but the insurer asked that the court stay any such arbitration. The court refused to do so. *See*

C.   *Arbitration Does Not Limit GEICO's Ability To Recover for Any Alleged Fraud by the Moving Defendants*

It should be emphasized that the Moving Defendants request arbitration only to minimize litigation costs and obtain speedy resolution of this dispute. If GEICO can prove its allegations, then arbitration does not limit its recovery in any way. Indeed, GEICO would likely recover any improperly paid No-Fault benefits faster through arbitration than it could through litigation. For instance, by compelling an insurer to arbitrate the issue of an incorrect payment, the court in *Frolich* recognized that insurers could recover the full amount of such a payment error through arbitration. *Frolich*, 465 N.Y.S.2d at 448. And more broadly, the Second Circuit has noted that a three-judge court in *Country-Wide Ins. Co. v. Harnett*, 426 F. Supp. 1030 (S.D.N.Y. 1977) , found that the compulsory binding no-fault arbitration imposed by § 5106 "clearly passed federal constitutional muster." *Lyeth v. Chrysler Corp.*, 929 F.2d 891, 895 (2d Cir. 1991).

Moreover, courts retain a significant role in no-fault disputes, even when arbitrated. No-fault arbitration awards "are subject to judicial review and may be vacated or modified for any one of the several grounds set forth" by statute. *Harnett*, 426 F. Supp. at 1033. And where an award exceeds $5,000, either party may obtain *de novo* judicial review. *See Frolich*, 465 N.Y.S.2d at 448; N.Y. Ins. Law § 5106(c).

Despite the fact that insurers may recover improper payments in full through either litigation or arbitration, some insurers have sought to avoid arbitration based on authorities that suggest insurers are authorized to initiate civil actions to recover such payments. *See, e.g.*, N.Y. Ins. Law § 409(c)(4) (encouraging insurers to "initiat[e] civil actions" based on information

---

*id.* at 11. Among other things, the court recognized that "every insurance policy in question contains an agreement to arbitrate questions of insurance coverage," much like GEICO's policies here. *Id.* at 13.

8

received by special investigation units). But such authorities, even broadly construed, are completely consistent with arbitration. In fact, arbitration promotes their purposes.

If an insurer incorrectly pays a no-fault claim, whether due to fraud, mistake, or some other reason, the arbitration option at § 5106 does not prevent the insurer from initiating a civil action to recover the payment.[4] But once initiated, § 5106(b) simply provides that the merits of the action may be referred to arbitration, if the claimant so elects. Thus, arbitration acts in support of insurers' civil action – particularly insofar as it provides a specialized forum equipped to adjudicate the merits of disputes over No-Fault claims quickly and efficiently.

### D.    *Arbitration Is Appropriate for GEICO's Lawsuit as a Matter of Public Policy*

More broadly, arbitration in this case furthers public policy as established by the New York legislature. After all, the purposes of the No-Fault law included, significantly, a reduction in "the amount of litigation in the courts" and the creation of a "less costly" arbitration option for claimants, where insurers possessed "a greater ability to bear the costs of litigation." *Harnett*, 426 F. Supp. at 1032, 1034. Denying the Moving Defendants the option to arbitrate in this case would subvert this important policy. Indeed insurers could evade arbitration in all cases simply by paying claims up front, but subsequently initiating litigation, as GEICO has done here. New York courts have recognized in similar contexts that it makes no sense to condition an insured's option to arbitrate on whether the insurer initiates litigation first. *See Republic Mortgage. Ins. Co. v. Countrywide Fin. Corp.*, 928 N.Y.S.2d 42, 42 (N.Y. App. Div. 2011) (interpreting mortgage insurance policy to permit insureds the option to arbitrate even where the insurer initiated litigation). Otherwise, the right to arbitration would be left to "procedural

---

[4] The action might, of course, be barred for other reasons not at issue in this particular motion.

gamesmanship," where insurers could thwart this right by "winning a race to the courthouse." *Id.* at 44.

Moreover, the No-Fault arbitrators are better equipped institutionally to address the merits of GEICO's claims. The Complaint purports to describe a variety of alleged misrepresentations – for instance, that Retailers miscoded medical equipment in some cases, mispriced equipment in other cases, and purportedly failed to deliver equipment at all, at times. However, the Complaint recognizes that at least in some cases, equipment of some sort was, in fact, delivered. Thus, adjudication of this dispute, in its entirety, would require that this Court delve into the details of hundreds of relatively small insurance claims disputes – only some of which are apparently listed in the Complaint.

No-Fault arbitrators are accustomed to adjudicating these specialized disputes in high volume, as New York courts recognize. *See Frolich*, 465 N.Y.S.2d at 448. Arbitration would therefore relieve this Court of a significant administrative burden – again, consistent with the purposes of the No-Fault law.

10

## CONCLUSION

For the foregoing reasons, the Moving Defendants' motion should be granted – all claims should be referred to arbitration. Any claims not referred to arbitration should be stayed pending arbitration.


Dated: Brooklyn, New York
            December 20, 2011

                                LAW OFFICE OF GARY TSIRELMAN, P.C.

                                By: _____/s/_____
                                GARY TSIRELMAN
                                Attorneys for the Moving Defendants
                                65 Jay Street
                                Brooklyn, New York 11201
                                (718) 438-1200
                                (718) 438-8883 *facsimile*