UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
:
GOVERNMENT EMPLOYEES INSURANCE : **MEMORANDUM**
CO., *et al.*, : **DECISION AND ORDER**
:
                      Plaintiffs, : 11 Civ. 5339 (BMC)
:
        - against - :
:
GRAND MEDICAL SUPPLY, INC., *et al.*, :
:
                      Defendants. :
:
--------------------------------------------------------------- X

**COGAN**, District Judge.

    This case is one of several recently filed in the Eastern District of New York by insurance companies seeking to recover benefits paid to health care providers under New York's no-fault insurance laws, and to avoid the future payment of benefits to these providers. Plaintiffs have asserted claims for civil racketeering, fraud, and unjust enrichment. The parties' familiarity with the allegations underlying this action and the basics of New York Insurance Law is assumed, but to summarize, plaintiffs allege that defendants, suppliers of orthotic and other medical devices, have submitted to plaintiffs, under the New York no-fault insurance law, inflated or false insurance claims for their products. They do this by receiving an assignment of the patients' right to reimbursement, then paying kickbacks to referring doctors or clinics who deliberately prescribe devices not listed on the schedule that dictates reimbursement amounts under the state's Medicaid regulations. Sometimes these defendants submit to plaintiffs wholly fraudulent invoices; other times they do not disclose that they have received rebates from the devices' manufacturers, which, under law, would have to be taken into account in determining their rate

of reimbursement. Plaintiffs allege that defendants have so far received $477,000 in improper claims, and have pending over one million dollars in additional claims.

Before me is defendants' motion to compel arbitration of these claims. For the reasons set forth below, defendants' motion is granted in part and denied in part.

## DISCUSSION

Defendants have moved to compel arbitration on the grounds that they have both a contractual right to arbitrate plaintiffs' claims under the governing insurance policies, as well as a statutory right to arbitrate under New York's Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law § 5101, et seq. (the "No-Fault Statute"). Plaintiffs offer several arguments in opposition, including that defendant Albert Khaimov lacks standing to compel arbitration; that defendants' purported rights to arbitrate do not apply to plaintiffs' claims to recover benefits already paid; and that defendants have waived their right to compel arbitration with regard to claims for reimbursement that are still pending. I address each of these arguments in turn below.

### I. Governing Law

The applicable subsection of the No-Fault Statute, N.Y. Ins. Law § 5106(b), read in conjunction with other subsections of that statute, provides that automobile insurance companies that wish to do business in the state of New York must offer in their insurance contracts an option to arbitrate that meets the requirements of that statute. See N.Y. Ins. Law § 5106(b) ("[e]very insurer shall provide a claimant with the option of submitting any dispute . . . to arbitration"). If an insurance company fails to offer such an option, the statute supplies it by

2

default. Id. at § 5103(h) (any no-fault policy "which does not contain provisions complying with the requirements of this article, shall be construed as if such provisions were embodied therein").

Here, both sides agree that the policies at issue contain an arbitration option that meets the requirements of the statute. There is, therefore, no occasion to rely on the default provision in §5103(h). Neither party has pointed to any substantive difference between the statutory requirements and the policy provision entered into because of it. The statute thus does not control their rights; the arbitration clause in the policies does. In other words, when an insurance company provides a statutorily compliant arbitration option, as the parties agree it did here, the statute effectively drops out of the analysis, and a court need look only to the arbitration clause in the policies to determine any issues concerning arbitration.

Because we look to the arbitration clause in the policies, not the statute, the framework for determining any disputed issues concerning arbitration must be determined in the context of the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA"), rather than any conflicting state law. The FAA is clear that whenever a contract containing an arbitration clause affects interstate commerce, the FAA supplants state law to the extent they are inconsistent. See Chung v. President Enters. Corp., 943 F.2d 225, 229 (2d Cir. 1991) (FAA governs all questions before a federal court regarding the validity and enforceability of arbitration agreements if there is a written agreement, jurisdiction, and the underlying transaction affects interstate commerce). There can be no doubt that an automobile insurance policy is a contract that affects interstate commerce. See generally Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S. Ct. 834 (1995).

For this reason, I respectfully disagree with the recent decision of my colleague Judge Jack Weinstein, who concluded in <u>Liberty Mut. Ins. Co. v. Excel Imaging, P.C.</u>,-- F.Supp.2d --, No. 11-CV-5780, 2012 U.S. Dist. LEXIS 86303 (E.D.N.Y. June 21, 2012), that "[d]efendants' right to arbitrate is a creation of state no-fault law. Defendants have presented no evidence that the Liberty Mutual insurance contracts bargained for the right to arbitrate affirmative fraud claims through their private agreements. As a result, New York law, rather than the Federal Arbitration Act, applies to determine whether the defendants have waived their arbitration rights." <u>Id.</u> at *29. I do not see the arbitration clause in the policy here as a "creation" of state law; rather, it is a "requirement" of state law. Plaintiffs did indeed "bargain for" the right to arbitrate claims that fall within the policies' arbitration clause by choosing to do business in New York and offering the arbitration clause required by New York's Insurance Law. And, again, because there can be no question that a policy of automobile insurance affects interstate commerce, the starting point for any analysis is the FAA, not state law.

This is not to say that there is no place for state law in this case. The FAA does not purport to answer every question that might arise in the context of a motion to compel arbitration, and indeed expressly defers to state law on fundamental issues such as contract formation and interpretation. <u>See</u> <u>Perry v. Thomas</u>, 482 U.S. 483, 492 n.9, 107 S. Ct. 2520 (1987). But the starting point is the FAA, which will take us either to federal law, if there is any, or state law, if there is not.

## II. Defendant Khaimov's Standing

Defendant Khaimov is the principal of the corporate defendants Grand Medical Supply, Inc., Royal Medical Supply, Inc., and Utopia Equipment, Inc. Plaintiffs do not deny that they

4

entered into valid arbitration agreements in their no-fault insurance policies with the corporate defendants, but rather argue as a threshold matter that defendant Khaimov has no standing to compel arbitration under those agreements, and that plaintiffs should, therefore, be permitted to prosecute their claims against him in this case regardless of whether plaintiffs must arbitrate their claims against the defendant corporations. Specifically, plaintiffs contend that only the corporate defendants took assignments from policy holders and submitted reimbursement claims, and that therefore only they have the right to compel arbitration. In response, defendants concede that Khaimov may not technically qualify as a claimant under the policies, but argue that plaintiffs should be estopped from circumventing their agreement to arbitrate disputes over no-fault reimbursement claims by bringing suit against Khaimov directly.

When determining whether to compel arbitration under the FAA, a court must answer two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." Hartford Accident and Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) (internal quotation marks omitted) (alteration in original). The first question – whether there is a valid arbitration agreement – is determined solely by state contract law, without influence from the general presumption in favor of arbitration underlying the FAA. See Applied Energetics, Inc. v. Newoak Capital Mkts., LLC, 645 F.3d 522, 526 (2d Cir. 2011); see also Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002) ("Because an agreement to arbitrate is a creature of contract . . . the ultimate question of whether the parties agreed to arbitrate is determined by state law."). The logical extension of this rule is that whether a particular person or entity is to be considered a party to an arbitration

5

agreement is similarly governed by state law. See Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 632, 129 S. Ct. 1896 (2009). Thus, New York law governs whether Khaimov has standing to compel arbitration even though he is not an assignee of the insurance policies.

Nevertheless, the distinction between federal law and New York law on this issue appears to be insignificant. The Second Circuit has long recognized that a non-signatory may either be bound by, or may compel a signatory to arbitrate pursuant to, an arbitration agreement based on common law principles of contract, including estoppel. See, e.g., Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 358-60 (2d Cir. 2008) (surveying caselaw in which non-signatory has compelled signatory to arbitrate); Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776-79 (2d Cir. 1995) (discussing five theories for binding non-signatories to arbitration agreements). Lower New York courts have consistently agreed, citing Second Circuit precedent both where a signatory is seeking to compel a non-signatory to arbitrate, see Merrill Lynch Intl. Fin., Inc. v. Donaldson, 27 Misc. 3d 391, 396, 895 N.Y.S.2d 698 (Sup. Ct. N.Y. Cnty. 2010); Matter of D & B Constr. of Westchester, 21 Misc. 3d 1125A, 875 N.Y.S.2d 819 (Sup. Ct. Westchester Cnty. 2008); Hoffman v. Finger Lakes Instrumentation, LLC, 7 Misc. 3d 179, 184-85, 789 N.Y.S.2d 410 (Sup. Ct. Monroe Cnty. 2005); cf. CDC Capital v. Gershon, 282 A.D.2d 217, 218, 723 N.Y.S.2d 166 (1st Dep't 2001) (holding that petitioners failed to bring non-signatories within recognized common-law grounds for enforcing an arbitration agreement, and citing Second Circuit law), as well as in the reverse scenario, present here, in which a non-signatory is seeking to compel arbitration with a signatory to the agreement, see Matter of Velez v. Fin. Indus. Regulatory Author. Dispute Resolution, Inc., No. 103697/08, 2008 N.Y. Slip Op 32018U, at *13 (Sup. Ct. N.Y. Cnty. July 18, 2008); cf. Matter of Nat'l Bank Ltd. v. Sec. Mgt.

6

Co., 29 A.D.3d 408, 409, 816 N.Y.S.2d 414 (1st Dep't 2006) (distinguishing on their facts Second Circuit cases providing non-signatory with right to compel arbitration). Further, although the New York Court of Appeals has not directly addressed the application of estoppel to arbitration agreements, see Ragone v. Atl. Video, No. 07 Civ. 6084, 2008 U.S. Dist. LEXIS 66369, at *12 n.5 (S.D.N.Y. Aug. 29, 2008), it has recognized that arbitration need not always involve parties to the agreement. See TNS Holdings v MKI Sec. Corp., 92 N.Y.2d 335, 339, 703 N.E.2d 749 (1998) (noting alter ego exception as one of the "certain limited circumstances" in which there is a "need to impute the intent to arbitrate to a nonsignatory"). In light of this caselaw and the fact that estoppel is one of the "'traditional principles' of state law" by which a contract may be enforced by a nonparty, see Carlisle, 556 U.S. at 631, 129 S. Ct. 1896, I find that the New York Court of Appeals would recognize estoppel as a ground by which a non-signatory can compel a signatory to arbitrate, and would adopt the Second Circuit's well-developed analysis on how that theory applies to the issues presented here.

    The best articulation by the Second Circuit of the application of estoppel to a non-signatory's motion to compel arbitration is in the recent decision of Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354 (2d Cir. 2008). In Sokol, the Second Circuit distilled its prior discussions of when estoppel will apply to such a scenario into the following two-prong test: 1) the subject matter of the dispute must be intertwined with the contract providing for arbitration; and 2) the moving party must have a relationship with a signatory to the agreement that is sufficiently close to support the conclusion that either (a) the non-movant effectively consented to extend its agreement to arbitrate to the moving party; or (b) it would be inequitable to allow the non-movant to avoid arbitration with the moving party. See id. at 361. Under this

approach, arbitration remains a matter of consent, and the doctrine of estoppel simply recognizes that consent can be implied in certain limited circumstances. See id. at 361-62.

The two-prong test outlined in Sokol is readily met here. First, plaintiffs' claims are sufficiently intertwined with the insurance policies that include the relevant arbitration agreements, as the policies are the sole reason that plaintiffs have any relationship with Khaimov and his corporations. It is these policies that enabled Khaimov to submit allegedly fraudulent reimbursement claims, and it is pursuant to these policies that plaintiffs paid the funds that they are now seeking to recover from Khaimov. Thus, there can be no dispute that plaintiffs' claims are intertwined with the agreements to which plaintiffs are a party. See, e.g., JLM Indus., Inc. v. Stolt-Nielson SA, 387 F.3d 163, 178 (2d Cir. 2004) (finding agreement and claims intertwined where plaintiff's entry into the agreement gave rise to the claimed injury).

Second, it is clear from the face of plaintiffs' complaint that the relationship between Khaimov and his companies is extremely close. Khaimov not only owns the corporations, but also controls them to such extent that he is the sole individual that, according to plaintiffs, is personally responsible for submitting the allegedly fraudulent claims on behalf of those companies. Moreover, plaintiffs effectively treat Khaimov and the corporate defendants as one in the same, defining them collectively in their complaint as the "Retail Defendants," and attributing the alleged wrongdoing jointly between Khaimov and the relevant corporation(s) in many of its allegations. Such collective treatment has been cited by at least one Second Circuit decision as evidence of a sufficiently close relationship to warrant estoppel. See Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 98 (2d Cir. 1999). Plaintiffs have therefore implicitly consented to arbitrate their claims against Khaimov, and it

8

would be inequitable for them to now claim that they have only agreed to arbitrate with the corporate defendants, but not their owner and agent who allegedly committed the fraudulent acts that form the basis of plaintiffs' suit against all defendants.

### III. Defendants' Right to Compel Arbitration

Having established that defendant Khaimov has standing to assert rights under the arbitration agreements in this case, the next issue is whether plaintiffs' claims fall within the scope of those agreements. Once an arbitration agreement has been lawfully reached, the strong federal policy in favor of arbitration is implicated, and "doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability." Hartford, 246 F.3d at 226. Nevertheless, the parties may limit by agreement the claims they wish to arbitrate, and "when such an intention [is] clear, the federal policy favoring arbitration must yield." New York v. Oneida Indian Nation, 90 F.3d 58, 61 (2d Cir. 1996). After all, the FAA does not "prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 478, 109 S. Ct. 1248 (1989).

In this case, the parties agree that the arbitration clause in the no-fault policies are either identical or substantially similar to the following: "In the event that any person making a claim for first party benefits and the Company do not agree regarding any matter relating to the claim, such person shall have the option of submitting such disagreement to arbitration pursuant to procedures promulgated or approved by the Superintendent of Insurance." I first address

9

whether this clause governs plaintiffs' claims to recover benefits already paid, and then address whether the clause applies to still-pending reimbursement claims.

### A) Benefits already paid

Notwithstanding the FAA's policy in favor of arbitration, I find that this provision does not apply to plaintiffs' claims here. In two well-reasoned and persuasive decisions based on substantially the same allegations made here, Judge Gleeson of this Court recently concluded that nearly identical contract language does not provide a policy holder with the right to compel arbitration of fraud claims brought by an insurance company after the company has already made payment. See Allstate Ins. Co. v. Khaimov, No. 11-CV-2391, 2012 U.S. Dist. LEXIS 26409, at *8-11 (E.D.N.Y. Feb. 29, 2012); Allstate Ins. Co. v. Lyons, No. 11-CV-2190, 2012 U.S. Dist. LEXIS 19866, at *47-49 (E.D.N.Y. Feb. 16, 2012). I agree with Judge Gleeson's conclusion. Specifically, I find that the language providing defendants with a right to arbitrate when they are "making a claim for first party benefits" clearly limits that right to disputes in which the claimant is seeking payment under a no-fault policy. It does not apply to an affirmative suit by plaintiffs to claw back allegedly fraudulent payments already made. Thus, defendants do not have a right to compel arbitration under the terms of the insurance policies.

Although I have held above that it is the policy language, not the statutory language, that determines the parties' rights, this interpretation of the policy language is fully consistent with Section 5106. Section 5106(b) provides that:

> Every insurer shall provide a claimant with the option of submitting any dispute involving the insurer's liability to pay first party benefits, or additional first party benefits, the amount thereof or any other matter which may arise pursuant to subsection (a) of this section to arbitration pursuant to simplified procedures to be promulgated or approved by the superintendent.

10

A close reading of the statute indicates that a claimant's right to arbitrate under subsection (b) is tied, quite logically, to subsection (a) of that statute, by the use of the phrase "or any other matter which may arise pursuant to subsection (a)." N.Y. Ins. Law § 5106(b) (emphasis added).[1]

Subsection (a) of Section 5106, like the contractual arbitration clause discussed above and the No-Fault Statute in general, is concerned with ensuring the prompt payment of submitted claims by insurance companies.[2] See Lyons, 2012 U.S. Dist. LEXIS 19866, at *41; State Farm Mut. Auto. Ins. v. Liguori, 589 F. Supp. 2d 221, 228-29 (E.D.N.Y. 2008) (No-Fault Statute "was enacted in order to provide a mechanism for prompt payment to accident victims for out-of-pocket medical costs") (citing Hosp. for Joint Disease v. Travelers Prop. Cas. Ins. Co., 9 N.Y.3d 312, 317, 879 N.E.2d 1291 (2007)); Progressive Ne. Ins. Co. v. Advanced Diagnostic and Treatment Med., P.C., No. 601112/00, Slip. Op. at 16 (Sup. Ct. N.Y Cnty. July 25, 2001) (Section 5106 "is clearly intended to provide for the prompt payment of covered No-Fault expenses due to a claimant."). It therefore provides rules regarding the timing of the payment of claims and the potential penalties insurers face for failure to comply with those time limits. The

---

[1] It is arguable that the rule of the last antecedent – a principal of statutory construction that interprets a limiting clause or phrase to modify only the phrase that it immediately follows – precludes a reading of the statute that interprets the reference to Section 5106(a) as limiting the scope of Section 5106(b) in its entirety. See Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V., 651 F.3d 329, 335 (2d Cir. 2011) (applying the rule to similar statutory language). However, both the natural reading of Section 5106 as a whole and the purpose behind the No-Fault Statute, as discussed in detail by Judge Gleeson and highlighted below, evinces an intent by the New York legislature to require arbitration when an insurance company refuses to pay no-fault benefits in a timely manner, not when an insurance company seeks to recover payments previously paid as a result of later-discovered fraud.

[2] Subsection (a) states:

> Payments of first party benefits and additional first party benefits shall be made as the loss is incurred. Such benefits are overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained. If proof is not supplied as to the entire claim, the amount which is supported by proof is overdue if not paid within thirty days after such proof is supplied. All overdue payments shall bear interest at the rate of two percent per month. If a valid claim or portion was overdue, the claimant shall also be entitled to recover his attorney's reasonable fee, for services necessarily performed in connection with securing payment of the overdue claim, subject to limitations promulgated by the superintendent in regulations.

11

caselaw is clear, however, that subsection (a) does not govern an affirmative suit by an insurer to recover for fraud. See Lyons, 2012 U.S. Dist. LEXIS 19866, at *42; see also; Liguori, 589 F. Supp. 2d at 230-31 (holding that 30-day rule in subsection (a) does not apply to affirmative suits for fraud); Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., 555 F. Supp. 2d 335 (E.D.N.Y. 2008) (same conclusion). Accordingly, Section 5106 does not provide defendants with any greater rights than the insurance policies, and defendants may not compel arbitration of claims that seek to recover benefits already paid. See Lyons, 2012 U.S. Dist. LEXIS 19866, at *48-49; see also Liberty Mut., 2012 U.S. Dist. LEXIS 86303, at *28-29, 31 (adopting reasoning in Lyons that Section 5106 does not permit a defendant to compel arbitration of fraud claims for sums paid).

### B) Pending reimbursement claims

Although plaintiffs' claims with regard to no-fault reimbursements already paid to defendants do not fall within the arbitration clause in the insurance policies (or, as noted above, Section 5601 either), disputes regarding defendants' pending reimbursement claims clearly do. Plaintiffs do not contend otherwise, but rather rely on New York caselaw in support of their argument that defendants have waived their right to compel arbitration by filing over 700 lawsuits in state court to obtain payment on the very same insurance claims plaintiffs are trying to avoid paying in this suit. However, as noted above, the FAA governs the arbitrability of plaintiffs' claims, including issues of waiver. See Graphic Scanning Corp. v. Yampol, 850 F.2d 131, 133 (2d Cir. 1988); Danny's Constr. Co. v. Birdair, Inc., 136 F. Supp. 2d 134, 142 (W.D.N.Y. 2000). The parties' discussion of New York caselaw is therefore misplaced.

12

In light of the strong federal policy in favor of arbitration discussed above, waiver "is not to be lightly inferred." Leadertex v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir. 1995). In determining whether a party has waived its right to arbitration by engaging in litigation, the Second Circuit has instructed courts to consider: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156, 159 (2d Cir. 2010). Prejudice is the most important of these three factors, as a party claiming waiver must demonstrate prejudice before a waiver will be found. See id.; Thysen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 105 (2d Cir. 2002). Prejudice can be substantive, i.e., when a party obtains discovery not available in arbitration or loses a motion and then attempts to relitigate that issue in arbitration, or it can be based on excessive cost and delay. See Thysen, 310 F.3d at 105; Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991). However, with regard to this second category, "[i]ncurring legal expenses inherent in litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver." PPG Indus. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997).

Here, plaintiffs have fallen woefully short of establishing that defendants have waived their right to arbitrate still-pending claims for reimbursement. The sole fact they highlight is that defendants have filed over 700 lawsuits in state court, many of which date back to 2009. This undoubtedly calls into question the motive behind defendants' sudden inclination to arbitrate. However, it does not establish waiver. Delay is only one factor in the waiver analysis, and the law is clear that a party must show something beyond delay – even a delay of several years – to

13

establish prejudice. See Thysen, 310 F.3d at 105. Plaintiffs offer no evidence that they were forced to engage in substantial motion practice or discovery, or that they incurred any costs beyond the preliminary costs inherent in litigation. Based on the record before me, the state court actions may very well have remained dormant since they were commenced. Thus, plaintiffs have failed to meet their burden with regard to waiver.[3]

In the alternative, plaintiffs contend that I should deny defendants motion to compel and require them to litigate in federal court because of considerations of judicial economy and the risk of inconsistent judgments. In support, plaintiffs identify several decisions or orders, all but one from New York state courts, that have stayed pending and/or future arbitrations so that a declaratory judgment action could be resolved first. See, e.g., GEICO Ins. Co. v. Williams, No. 015804/10, 2011 NY Slip Op 30326U (Sup. Ct. Nassau Cnty. Feb. 1, 2011); Safeco Ins. Co. of Ind. V. Morel, No. 2235/09, 2009 NY Slip Op 32187U (Sup. Ct. Nassau Cnty. Sep. 15, 2009). However, plaintiffs fail to appreciate that under the FAA, I cannot deny a party its contractual right to arbitrate because I believe considerations of efficiency or the goal of avoiding inconsistent judgments should take precedence. The Supreme Court has made clear that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to arbitration on issues as to which an arbitration agreement

---

[3] A threshold issue not addressed by the parties is whether the question of waiver should be decided by this Court or by the arbitrator. The Supreme Court has recognized in dicta a presumption that an arbitrator should decide allegations of waiver, delay, or a similar defense, see Howsam v. Dean Witter Reynolds, 537 U.S. 79, 84, 123 S. Ct. 588 (2002), and the Second Circuit has cited this language positively, see Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 394 (2d Cir. 2011); Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38, 351 F.3d 43, 45 (2d Cir. 2003). However, the Circuit recognized prior to Howsam that a defense of waiver based on prior litigation of the dispute by the party seeking to compel arbitration is to be decided by the court. See, e.g., Bell, 293 F.3d at 569-70; Doctor's Assocs. v. Distajo, 66 F.3d 438, 456-57 (2d Cir. 1995). Further, decisions subsequent to Howsam have either continued to apply Distajo, see Apple & Eve, LLC v. Yantai N. Andre Juice Co., 610 F. Supp. 2d 226, 229-231 (E.D.N.Y. 2009), or have discussed waiver without addressing who should resolve that dispute, see La. Stadium, 626 F.3d 156. I need not resolve this question here, because the parties have not raised it and because plaintiffs have failed to establish that defendants waived their right to compel arbitration of still-unpaid claims.

has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 105 S. Ct. 1238 (1985) (emphasis in original). Thus, the FAA compels the arbitration of arbitrable claims where, as here, a party files a motion to compel, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." Id. at 217, 105 S. Ct. 1238; see also KPMG LLP v. Cocchi, --- U.S. ---, 132 S. Ct. 23, 24 , 181 L. Ed. 2d 323 (2011) ("The [FAA] has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation.") (per curiam). Consistent with this precedent, the Second Circuit recently held that a district court lacked authority under the FAA to enjoin the arbitration of claims covered by an arbitration agreement. See Anderson v. Beland (In re Am. Express Fin. Advisors Secs. Litig.), 672 F.3d 113, 142 (2d Cir. 2011). Accordingly, I have no power to deny defendants' motion to compel based on these alternative considerations.

## CONCLUSION

For the reasons discussed herein, defendants' motion to compel is granted with respect to still-unpaid reimbursement claims, and denied with respect to reimbursement claims already paid by plaintiffs. By separate order, the Court will set down a status conference to complete discovery and bring this case to trial.

**SO ORDERED.**

                                                      Signed electronically/Brian M. Cogan
                                                      _____
                                                                      U.S.D.J.

Dated: Brooklyn, New York
        July 4, 2012